STILLWATER LAKES CIVIC ASSOCIATION, INC.

v.

Edwin KRAWITZ, Appellant.

Commonwealth Court of Pennsylvania.

Submitted Feb. 23, 2001.
Decided April 20, 2001.

Edwin Krawitz, Stroudsburg, for appellant.

Joseph V. Sebelin, Jr., Stroudsburg, for appellee.

Before SMITH and FRIEDMAN, Judges, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Edwin Krawitz (Krawitz) appeals from the April 10, 2000 order of the Court of Common Pleas of Monroe County (trial court), which denied Krawitz's motion for post-trial relief and entered judgment in favor of Stillwater Lakes Civic Association, Inc. (the Association) in the amount of $3,030.50, plus interest from September 5, 1998. We reverse.

On April 15, 1992, a deed was recorded in Monroe County conveying Lot No. 2512, Section H–II on a subdivision plat of Stillwater Lake Estates, Sun Dance Stillwater Corporation, to Krawitz. The deed stated that the conveyance was "under and subject to the conditions and restrictions as set forth in Deed Book Volume 471, Page 150." (Findings of Fact, No. 1, O.R., Plaintiff's Exh. No. 1.) The conditions and restrictions set forth in Deed Book Volume 471, Page 150 include the following:

3. PURCHASER agrees to pay SELLER each and every year a road maintenance and use charge for the maintenance and use of the roads traversing the development, and a recreation charge for maintenance and use of recreational facilities, in such amount as the SELLER in its sole and absolute discretion determines is to be paid. In any event, the minimum yearly road maintenance and use charge to be paid by PURCHASER shall be $20.00.

(Findings of Fact, No. 2.) The Association's by-laws provide:

Section 4.1 All persons who own residential property, including adult members of the family of such owners, at Stillwater Lake Estates, shall be members of this Association. (Amended January 28, 1995)

*Section 4.2* A member who has paid all current assessments, charges and dues, and who has not been found by the Board of Directors to be in violation of the rules and regulations of the Association, shall be considered a member in good standing. Any member who is delinquent in the payment of any assessments, charges and dues assessed against such member on any property owned by such member after March 1st of each year shall cease to be a member in good standing of this Association, and shall be considered to be in violation of the rules and regulations of this Association.

*Section 4.3* Each member shall pay annual assessments, charges and dues on each lot owned by said member in such amounts and payable at such times as the Board of Directors, by resolution, shall prescribe. Assessments, charges and dues shall be uniformly levied on each lot in a manner consistent with the classification of the lot as the Board of Directors may determine....

*Section 17.1* Upon the failure of any property owner to pay the annual Association membership dues, charges, assessments and sewer/water charges for a period of time more than 90 days after invoices are mailed by the Association, the Association shall have the right to seek a judgment against such property owner for the full amount of the arrearage. The property owner shall also be responsible for court costs and legal fees incurred by the Association in seeking and collecting such judgment.

(Findings of Fact, No. 3.)

On July 25, 1994, a Memorandum of Installment Sale Agreement was recorded

in the Monroe County Office for the Recorder of Deeds with respect to Lot No. 2512. The Agreement identified Krawitz as the seller and Terry L. Fritz (Fritz) as the buyer. (Findings of Fact, No. 4.) Neither Fritz nor Krawitz paid the Association dues and assessments for Lot No. 2512 for the period from July 25, 1994 to September 5, 1998. The total amount due was $2,030.50. In addition, neither Fritz nor Krawitz paid sewer charges in the amount of $831.75. (Findings of Fact, No. 5.)

Krawitz retook possession of Lot No. 2512 in the summer of 1998 after successfully concluding an ejectment action against Fritz. (Findings of Fact, No. 6.) On October 30, 1998, the Association sought a judgment against Krawitz for the unpaid charges and assessments; the Association incurred $2,471.40 in attorney fees in their efforts to collect the money from him. (Findings of Fact, No. 7; R.R. at 2a.)

After a non-jury trial, the trial court concluded that Krawitz was responsible for the road and recreation assessments because those are derived from a covenant that runs with the land. The trial court also concluded that Krawitz was *not* responsible for the payment of sewer charges because he was not in possession of the property when those services were rendered. Finally, the trial court decided that the Association was entitled to a proportionate amount of their attorney fees, or $1000.00. Thus, the trial court found in favor of the Association in the amount of $3,030.50, plus interest from September 5, 1998. Krawtiz filed a motion for post-trial relief, which the trial court denied. Krawitz now appeals to this court.[1]

Krawitz argues that the trial court erred in concluding that he was responsible for the road and recreation assessments because, from July 25, 1994 to September 5, 1998, he was not the owner of the property. Krawitz contends that, having sold the property to Fritz through an Installment Sale Agreement, he held legal title only as a security interest for the payment of the unpaid purchase price of the property. Krawitz points out that the definition of a "unit owner" in section 5103 of the Uniform Planned Community Act (Act), 68 Pa.C.S. § 5103, states that the term "does not include a person having an interest in a unit solely as security for an obligation." We agree.

Under the typical installment land contract, the buyer takes possession of the property and makes periodic installment payments to the seller until the contract price is paid. *Anderson Contracting Company v. Daugherty*, 274 Pa.Super. 13, 417 A.2d 1227 (1979), *appeal dismissed*, 492 Pa. 630, 425 A.2d 329 (1980). When the contract is signed, the buyer becomes the equitable or beneficial owner of the property. *Byrne v. Kanig*, 231 Pa.Super. 531, 332 A.2d 472 (1974). The seller retains legal title to the property as security for the buyer's performance of the contract until the buyer satisfies the terms of the contract. *Anderson Contracting Company.* At that point, the seller delivers a deed to the buyer, conveying legal title to the property. RESTATEMENT (THIRD) OF PROPERTY (Mortgages) § 3.4 cmt. a (1996).

Although the seller retains legal title as security for payment of the contract price, Pennsylvania case law states

1. Our scope of review of an order of a trial court denying a motion for post-trial relief is limited to whether the trial court abused its discretion or committed an error of law. *In re Condemnation by the Pennsylvania Turnpike Commission of 1.169 Acres in Fee Simple, in Big Beaver Borough, Beaver County,* 745 A.2d 66 (Pa.Cmwlth.2000).

that an installment sale agreement should be treated as a mortgage. *Anderson Contracting Company.* Indeed, Pennsylvania has adopted a view stating that the relationship between a seller and a buyer who are parties to an installment sale agreement is that of mortgagee and mortgagor.[2] *Id.* A mortgage is the retention of an interest in real property as security for the performance of an obligation. RESTATEMENT (THIRD) OF PROPERTY (Mortgages) § 1.1 (1996).

■ Section 5302(a)(2) of the Act, 68 Pa.C.S. § 5302(a)(2), states that an owners' association may collect assessments for common expenses from "unit owners." However, the term "unit owner" in the Act does not include a person having an interest in a unit solely as security for an obligation. Thus, if the Act applies here and we treat Krawitz as a mortgagee for the period from July 25, 1994 to September 5, 1998, the Association would have no legal authority for collecting assessments from Krawitz for that period.

Section 5102(b) of the Act, 68 Pa.C.S. § 5102(b), states that section 5302(a)(2) and certain other sections of the Act are retroactive, i.e., they apply to planned communities created in the Commonwealth prior to the Act's 1997 effective date with respect to events and circumstances occurring after that effective date. Moreover, the definition of "unit owner" in section 5103 of the Act is retroactive in the same manner to the extent necessary to con-

strue section 5302(a)(2) and the other sections. 68 Pa.C.S. § 5102(b).

Here, the Association filed a suit against Krawitz on October 30, 1998 in an attempt to collect assessments from Krawitz. Because the collection attempt occurred after the Act's 1997 effective date, section 5302(a)(2) and the definition of "unit owner" in section 5103 apply here. Because we must treat Krawitz as a person whose interest in Lot No. 2512 during the period from July 25, 1994 to September 5, 1998 was solely as security for an obligation, Krawitz was not a "unit owner" during that period. Thus, the Association had no authority on October 30, 1998 to collect the assessments from Krawitz for that period.

■ Accordingly, we reverse.[3]

## *ORDER*

AND NOW, this 20th day of April, 2001, the order of the Court of Common Pleas of Monroe County, dated April 10, 2000, is hereby reversed.

---

**2.** We note that the RESTATEMENT (THIRD) OF PROPERTY (Mortgages) § 3.4 cmt. a & § 3.4(b) (1996) states that, in an installment sale agreement, the seller is financing the balance of the purchase price, and that the installment sale contract creates a mortgage.

**3.** The trial court held otherwise because the road and recreation assessments are covenants that run with the land. However, a covenant that runs with the land may pass to

successive owners *or* occupiers of the land; moreover, the obligation may run only with *certain interests* in the land. RESTATEMENT (THIRD) OF PROPERTY (Servitudes) § 1.1 (1998). Here, it is impossible to determine from the covenant whether it runs with the legal owner, the equitable owner or both. Thus, we see no basis for the trial court's holding.