# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hillside Villas Condominium          :
Association, Inc.                     :
                                      :
                                      :
            v.                        :    No. 615 C.D. 2017
                                      :
Bottaro Development Company,          :
Mervin E.S. Resnick and Joyce K.     :
Resnick Irrevocable Trust, John L.   :
Bottaro, Lawrence J. Bottaro, Bottaro :
Construction Company                 :
                                      :
Appeal of:  Mervin E.S. Resnick and  :
Joyce K. Resnick Irrevocable Trust   :


Hillside Villas Condominium          :
Association, Inc.,                    :
                    Appellant         :
                                      :
            v.                        :    No. 616 C.D. 2017
                                      :    Argued: December 7, 2017
Bottaro Development Company,          :
Mervin E.S. Resnick and Joyce K.     :
Resnick Irrevocable Trust, John L.   :
Bottaro, Lawrence J. Bottaro, Bottaro :
Construction Company                 :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**              **FILED: January 16, 2018**


        In these consolidated cases, both parties appeal from a final judgment

of the Court of Common Pleas of Dauphin County[1] (trial court).  The trial court held

---
        [1]  The Honorable William T. Tully presided.

that the Mervin E.S. Resnick and Joyce K. Resnick Irrevocable Trust (Trust) was a declarant as that term is defined by the Pennsylvania Uniform Condominium Act (PUCA).[2] The trial court thus found the Trust jointly and severally liable, along with the condominium developer, to Hillside Villas Condominium Association, Inc. (Association) for the cost of repairs and completion of the common elements of the condominium property. The trial court awarded damages to the Association, but in an amount less than the damages to which the parties stipulated.

The Trust appealed the determination of its declarant status. The Association cross-appealed the trial court's reduction of the stipulated damages amount. Upon review, we affirm in part, and vacate and remand in part.

## I. Background

The Association is a non-profit condominium association comprised of the unit owners of Hillside Villas Condominium. The Trust owned a tract of real property in Susquehanna Township, Dauphin County (Township). In 2001, the Trust entered into an Agreement of Sale (Agreement) to convey part of the land to Bottaro Development Company (Developer).

The Agreement contemplated development of the purchased land into a condominium. Developer did not pay the purchase price at the time of executing the Agreement, and the Trust did not transfer title to the property at that time. Instead, the parties agreed that the Trust would receive payment in a series of settlements as units were built. The Agreement entitled the Trust to receive an

---

[2] 68 Pa. C.S. §§3101-3414.

additional payment of $25,000 beyond the original purchase price for each unit Developer constructed above 24 units. The Agreement also gave the Trust the unilateral option to void the Agreement if Developer failed to sell at least four units per year or if the Township did not approve the parties' land development plan. Nothing in the Agreement stated that the Trust was retaining only a security interest in the contemplated condominium development.

Developer and the Trust together submitted a Preliminary/Final Land Development Plan (the Plan) to the Township. The Township approved the Plan, and it was recorded in the office of the Recorder of Deeds of Dauphin County. The Plan identified the Trust as the owner of the property and Developer as the equitable owner.

The Trust and Developer jointly executed and recorded the Declaration for Hillside Villas, a Condominium (Declaration) identifying both the Trust and Developer as the declarant. The associated Declaration Plat (Plat) and a series of nine subsequent recorded amendments to the Declaration all identified the Trust and Developer as the declarant. Importantly, nothing in the Declaration, Plat, or amendments stated that the Trust held only a security interest. To the contrary, the Declaration specifically represented to the public that Developer and the Trust were building and creating the condominium.

The Public Offering Statement for Hillside Villas likewise identified the Trust and Developer as the declarant. Significantly, in the Public Offering Statement, the declarant (Developer and the Trust) provided express warranties

3

relating to construction of the units. Again, nothing in the Public Offering Statement stated that the Trust held only a security interest in the property or that the Trust was not a declarant for purposes of the express warranties.

As the units were constructed, the Trust and Developer executed a deed for each unit and an Assignment of Special Declarant Rights (Assignment) for each group of units. Each deed named the Trust as a grantor and co-declarant. Each deed also referred to the relevant Assignment. Each Assignment related to a group of units and the limited common elements associated with those units. Also, each Assignment identified the Trust as the assigning declarant and Developer as the successor declarant. In each, the Trust expressly retained all declarant rights not assigned.

Notably, the Trust never executed an Assignment regarding the last units, Building H, Units 3 and 4, or the limited common elements associated with those units. Further, the record contains no indication that the Trust ever assigned its declarant rights regarding the general common elements such as the street, sidewalks, curbing, and stormwater management system, many of which were the subject of claims for completion and repairs.

Developer never completed construction of many of the common elements. Others were defective and required extensive repair. The Association sued Developer and the Trust, seeking to recover the cost of the needed completion and repairs.

The Trust asserted a cross-claim against Developer for indemnification. Developer stipulated to: (1) entry of judgment against it and in favor of the Association on the complaint; (2) entry of judgment against it and in favor of the Trust on the cross-claim; and, (3) damages in an amount to be proven at trial, as to which Developer agreed to offer no defense.

The main focus of the parties' dispute at trial was whether the Trust was a declarant as that term is defined by PUCA, 68 Pa. C.S. §3103. The Association relied on evidence identifying the Trust as a declarant in recorded documents including the Declaration, Plat, Public Offering Statement, and deeds. The Association also asserted that the Assignments did not divest the Trust of all its interest in the common elements. The Trust countered that its retention of legal title and its attendant identification as a declarant in recorded documents merely reflected its security interest in the property, supporting its right to payment of the purchase price by Developer.

The Association offered evidence that it had already expended $42,700 on stormwater issues and the common street. The Association presented expert evidence that the additional cost to complete the necessary construction and repairs would be $863,285. Thus, the Association presented evidence of total damages in the amount of $905,985. The Trust stipulated to the damages amount as presented in the Association's evidence. See Reproduced Record (R.R.) at 340a.

After a bench trial, the trial court found the Trust was a declarant under PUCA. The trial court entered judgment in favor of the Association and jointly and

5

severally against the Trust and Developer in the amount of $669,865. Both parties appealed to the Superior Court, which transferred the appeals to this Court. The Association opposed the transfer, arguing that the Superior Court previously issued rulings on issues involving similar subject matter. We defer to the Superior Court's determination of the appropriate court for these appeals.

## II. Issues

The appeal and cross-appeal present several issues for this Court's review,[3] which we paraphrase as follows:

> 1. Whether the holder of legal title to real property, which is listed as a declarant in a condominium declaration, public offering, deeds, and other recorded documents, is a declarant under PUCA for purposes of liability to the unit owners for completion and repair of common elements.
>
> 2. Whether an assignment of special declarant rights relieves the assigning declarant of liability regarding defective and incomplete common elements.
>
> 3. Whether the trial court committed legal error by declining to honor the parties' damages stipulation.

## III. Discussion

### A. The Trust's Appeal – Declarant Status under PUCA

The Trust argues that the trial court committed legal error in determining that the Trust was a declarant under PUCA, because the Trust held only

---

[3] On appeal from a non-jury trial, this Court's review is limited to a determination of whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. Deep Meadows Civic Ass'n v. Trusello, 140 A.3d 60 (Pa. Cmwlth. 2016).

6

a security interest in the real property. In the alternative, the Trust argues that even if it was initially a declarant, it successfully assigned all liabilities under the Declaration by the series of Assignments of special declarant rights in connection with the construction and sale of the units.[4]

## 1. Initial Declarant Status

### a. Contentions

The Trust argues that the Agreement with Developer left the Trust holding only a security interest in the property. Because PUCA expressly excludes the holder of a security interest from the definition of a declarant, the Trust argues that it cannot be liable to the Association under PUCA.

The Trust asserts that the holdings of DiDonato v. Reliance Standard Life Insurance Co., 249 A.2d 327 (Pa. 1969), Byrne v. Kanig, 332 A.2d 472 (Pa. Super. 1974), and similar decisions govern this case. The Trust further relies on Stillwater Lakes Civic Association v. Krawitz, 772 A.2d 118 (Pa. Cmwlth. 2001), in which this Court held that an agreement of sale was a substitute for a mortgage and the seller retained only a security interest in the unit during the time the buyer was in possession. Id. at 120-21. These decisions stand for the general proposition that an unconditional agreement of sale for real property vests equitable title in the buyer, with the seller retaining only a security interest in the property.

---

[4] The Trust also asserted that the trial court lacked competent evidence or committed legal error in concluding "that the Trust failed to distinguish itself from the Declarant …." Appellant's Br. at 4. The Trust's brief, however, contains no argument section corresponding to this stated issue. Accordingly, to the extent that this argument is distinct from the Trust's other arguments, it is waived. See Sch. Dist. of Phila. v. Jones, 139 A.3d 358 (Pa. Cmwlth. 2016).

7

The Association argues that the Agreement between the Trust and Developer was not a typical unconditional agreement of sale. The Association emphasizes that the Trust conditioned the Agreement on Developer's maintenance of a minimum annual unit sales volume, and that the Trust had the sole option to void the sale if Developer failed to satisfy the sales quota. The Association points out that the Trust designated itself as the declarant, along with Developer, in documents recorded under PUCA. The Association also contends that the Trust still holds record title to the unsold land in the development and declarant rights in the common areas.

## b. Analysis

The general principles of contract and real property law cited by the Trust have some appeal. Such principles apply if not displaced by PUCA's provisions. See 68 Pa. C.S. §3108. Upon analysis, however, we conclude that this case is distinguishable from those on which the Trust relies. Unlike the sellers in those cases, the Trust did not enter into an unconditional sales agreement leaving it with only a security interest. The Trust therefore falls within PUCA's definition of a declarant.

To that end, PUCA defines a "declarant," in pertinent part, as follows:

(1)     If the condominium has been created, 'declarant' means:

(i)     any person who has executed a declaration, or an amendment to a declaration to add additional real estate, other than persons holding interests in the real estate solely as security for an obligation ….

68 Pa. C.S. §3103 (emphasis added).

8

Here, the Trust retained more than a bare security interest protecting its right to payment of the purchase price. The Trust had a right not just to terminate, but to void the Agreement if Developer failed to meet certain sales benchmarks. Had that occurred, the Trust stood to benefit from any intervening increase in the value of the property by reason of whatever development had occurred to that point. Additionally, the Trust was entitled to receive an additional payment of $25,000 above the purchase price for every unit Developer built over 24 units. Thus, the Trust received value under the Agreement beyond just payment of the purchase price of undeveloped land. The Agreement was not merely an unconditional installment sales agreement. The Trust did not hold merely a security interest.

Moreover, the Trust expressly and repeatedly defined itself in recorded documents as the declarant along with Developer. By doing so, the Trust acquired special declarant rights, including retained rights in the common elements[5] of the development. PUCA defines "special declarant rights," in pertinent part, as:

Rights reserved for the benefit of a declarant to:

(1)     Complete improvements indicated on plats and plans filed with the declaration (Section 3210).

* * * *

(7)     Use easements through the common elements for the purpose of making improvements within the condominium ….

---

[5] Under the Pennsylvania Uniform Condominium Act (PUCA), "common elements" are "[a]ll portions of a condominium other than the units." 68 Pa. C.S. §3103. A "limited common element" is "[a] portion of the common elements allocated by or pursuant to the declaration or by operation of section 3203(2) or (4) (relating to unit boundaries) for the exclusive use of one or more but fewer than all of the units." Id.

9

68 Pa. C.S. §3103(1), (7).

With those rights came corresponding obligations imposed by PUCA that the Trust was not free to ignore. PUCA imposes a mandatory warranty against structural defects providing, in pertinent part:

> **(a) Definition.** — As used in this section, 'structural defects' means those defects in components constituting any unit or common element which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration or replacement. Nothing in this section shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements.
>
> **(b) General rule.** — A declarant warrants against structural defects in each of the units for two years from the date each is conveyed to a bona fide purchaser, and all of the common elements for two years. Any conveyance of a unit during the two-year warranty period shall be deemed to transfer to the purchaser all of the declarant's warranties created under this section ….

68 Pa. C.S. §3411(a), (b).[6] Under PUCA, a "declarant's obligation to complete and restore" includes, in pertinent part:

> **(b) Repair and restoration.** — The declarant is subject to liability for the prompt repair and restoration, to a condition compatible with the remainder of the condominium, of any portion of the condominium affected by the exercise of rights reserved pursuant to or created by section[] … 3218 (relating to easement to facilitate completion …).

68 Pa. C.S. §3414(b).

---

[6] The Trust has not asserted that the Association's claims are untimely in any respect or that any mandatory statutory warranty has expired.

10

A comparison of the Trust's position with that of Developer's construction lender highlights the distinction in status between the Trust and a mere holder of a security interest. Developer obtained a series of open-ended construction loans, secured by mortgages, to finance the development of the condominium. See R.R. at 600a-824a.[7] The lender, despite its first mortgage lien position, never identified itself as a declarant in relation to the condominium; nor did it ever acquire any related special declarant rights or attendant obligations. Instead, the Declaration set forth specific rights accorded to the mortgagee, which did not overlap with any declarant rights. Similarly, the Public Offering Statement described only the construction mortgage in its "Liens and Encumbrances" section; it gave no indication that the Trust's interest as a named declarant was limited to a lien or encumbrance. The construction lender, in contrast to the Trust, held only a security interest, as PUCA applies that term.

PUCA contemplates a liberal construction that will provide make-whole relief to an aggrieved party. It provides: "The remedies provided by this subpart shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed ...." 68 Pa. C.S. §3113. Allowing the Trust to escape the obligations it necessarily assumed along with the rights it acquired in the condominium's common elements would contravene the purpose of PUCA.

---

[7] The initial construction mortgage stated as "background" that Developer held equitable title and the Trust held bare legal title solely as security for the unpaid balance of the purchase price. Reproduced Record (R.R.) at 600a. That recitation is not determinative of the Trust's legal status under PUCA.

Buyers of units in a condominum development have a right to proper construction and completion of the common elements. Hence, PUCA imposes on the declarant a duty to provide that construction, and a mandatory warranty to guarantee its proper completion. See 68 Pa. C.S. §§3411, 3414. PUCA also requires a public offering statement to disclose the identity of the declarant. 68 Pa. C.S. §3402. By identifying itself as a declarant in recorded documents, including the Public Offering Statement, the Trust manifested its intent to assume its mandatory statutory responsibility for and warranty of the proper completion of the common elements in which it held special declarant rights. Unit buyers were entitled to rely on that warranty. The Trust's argument after the fact that it really intended to hold only a security interest is unavailing.

Perhaps most importantly, the Trust expressly undertook obligations directly to unit purchasers. The Public Offering Statement defined the Trust as a declarant and then set forth the declarant's express warranties to all unit purchasers. The Public Offering Statement contained no disclaimer of any kind by the Trust relating to those express warranties. Thus, the Trust facially represented to the public that it was providing the express warranties.

Similarly, the deed to each unit identified the Trust as a grantor and a co-declarant. The Trust therefore assumed the obligations and warranties of a declarant to each individual grantee. Like the Public Offering Statement, the deeds contained no disclaimer by the Trust of those obligations and warranties.[8] Thus, the

_____

[8] Each deed referred to a related partial assignment of special declarant rights, and confirmed the Trust's transfer to Developer of any interest in the unit being sold. Nothing in the deeds limited the Trust's existing rights or obligations concerning the general common elements.

12

Trust's duties and obligations to the unit buyers arose not only from its statutory declarant status, but also from its express undertaking of those duties and obligations in recorded documents on which unit purchasers were entitled to rely.

## 2. The Trust's Post-Assignment Obligations

In the alternative, the Trust argues that even if it was originally a declarant, it successfully relinquished that status by assigning its declarant special rights in connection with the sales of the various units. We discern no merit in this argument.

The Trust assigned only rights relating to the units themselves and their attendant limited common elements. It expressly retained all rights not assigned. Those rights include an interest in limited common elements attendant to unsold units, as well as in common elements that serve the entire development.

Section 3304(b)(2.1) of PUCA provides that a transferor declarant remains responsible for obligations and liabilities relating to retained special declarant rights, <u>whether those obligations are imposed by PUCA or assumed by the declarant</u>:

> (b)   Liability of declarant following transfer. — Upon transfer of any special declarant right, the liability of a transferor declarant is as follows:
>
> (1)   A transferor is not relieved of any obligation or liability arising before the transfer and remains liable for warranty obligations imposed upon him by this subpart ….

* * * *

(2.1)  If a transferor retains any special declarant right, but transfers one or more other special declarant rights to a successor who is not an affiliate of the declarant, the transferor is liable for any obligations or liabilities imposed on a declarant <u>by this subpart or by the declaration</u> relating to the retained special declarant rights arising after the transfer ….

68 Pa. C.S. §3304(b)(1), (2.1) (emphasis added).

Thus, PUCA imposes continuing obligations on a declarant even after it assigns some or all of its special declarant rights.  If a declarant transfers special declarant rights to a successor, the transferor declarant nonetheless remains liable for all warranties and obligations that arose before the transfer.  68 Pa C.S. §3304(b)(1).  If the transferor declarant assigns some of its special declarant rights but retains others, it remains liable for all warranties and obligations, even if they arise after the transfer, relating to any elements in which the transferor declarant retains any rights.  68 Pa. C.S. §3304(b)(2.1).

In this case, the record demonstrates that every Assignment of special declarant rights by the Trust related only to the limited common elements attendant to the units identified in that particular Assignment.  The Trust never assigned its special declarant rights relating to the final units constructed, Building H, Units 3 and 4.

More importantly, the Trust expressly retained in each Assignment all special declarant rights not specifically assigned.  The Trust never transferred its

14

special declarant rights in the general common elements, such as the street, sidewalks, curbing, and stormwater management system. These same common elements are subjects of the Association's damages claim. Therefore, the Trust remained liable under PUCA for the statutory obligations and warranties relating to those areas, regardless of whether those obligations and warranties arose before or after the Assignments. See 68 Pa. C.S. §3304(b)(2.1).

Indeed, the Trust necessarily remained liable for those common elements regardless of any possible assignment. Common elements, such as the street, sidewalks, and curbing, appeared on the Plat and thus were obligations arising at the commencement of the condominium project. See R.R. at 407a-09a. Liability and warranties for those elements therefore remained, notwithstanding any later assignment of special declarant rights. See 68 Pa. C.S. §3304(b)(1).

Accordingly, the trial court correctly found the Trust liable jointly and severally with Developer for the cost of completing the common elements and repairing defects in their original construction.

## B. The Association's Cross-Appeal – Stipulated Damages

In its cross-appeal, the Association argues that the trial court erred by reducing the amount of its judgment without explanation and in contravention of the parties' stipulation regarding the damages amount. We agree.

At trial, the Association presented expert evidence that the total cost to complete the remaining work needed in the development would be $863,285. Tr.

15

Ct., Slip Op., 3/24/16, at 19. The evidence also showed that the Association already spent $42,700 on some of the most urgent repairs, id., bringing the total cost for all the needed construction to $905,985 ($863,285 plus $42,700). The Trust stipulated to the damages amount as presented in the Association's evidence. See R.R. at 340a. Developer previously stipulated to the damages amount to be shown at trial and agreed not to offer any defense on the damages amount. Tr. Ct., Slip Op., 3/24/16, at 2. The Association accordingly demanded a total damages award of $905,985.

In its verdict, the trial court found in favor of the Association, but awarded only $669,865 in damages. Neither the verdict nor the trial court's supporting opinion contained any explanation for the reduction of the damages from the amount stipulated by the parties.

In its post-trial motion, the Association argued that the trial court erred by discounting the only expert evidence offered at trial and by ignoring the parties' stipulation. The trial court denied the post-trial motion, again without explanation.

In its opinion under Pa. R.A.P. 1925(a), the trial court explained that its damages award reflected its view of the credibility and weight of the evidence. Tr. Ct., Slip Op., 8/2/16 (1925(a) Op.), at 10. The trial court acknowledged the parties' damages stipulation; however, it observed that the Association cited no statutory authority or case law to support its argument that the court should honor the stipulation. Id.

In its post-trial motion, the Association presented a fully-developed argument, including multiple citations to the record. Its argument was

16

straightforward: only one expert presented damages evidence at trial, and the parties stipulated to the amount of damages that expert calculated. The Association offered adequate support for that argument. This Court concludes that the trial court erred by requiring a citation to legal authority in these circumstances. We therefore address the merits of the Association's damages argument.[9]

Under Pennsylvania law, litigants may limit any of the issues available for the court's consideration except matters affecting the jurisdiction, business, or convenience of the court. Northbrook Life Ins. Co. v. Com., 949 A.2d 333 (Pa. 2008) (reversing this Court's judgment that disregarded the parties' stipulation). A stipulation of facts is binding and conclusive on a trial court, although the court may nonetheless draw its own legal conclusions from those facts. See Senex Explosives, Inc. v. Commonwealth, 58 A.3d 131 (Pa. Cmwlth. 2012).

In this case, the parties' damages stipulation was undisputed.[10] The Association asserted it at trial, in its post-trial motion, and in its brief on appeal. The

---

[9] Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure similarly does not mandate citations to authority for every argument. The rule requires parties to support their arguments with "such discussion and citation of authorities as are deemed pertinent." Id. This Court declines to find waiver of arguments that contain no legal citations but are otherwise sufficiently developed to allow meaningful appellate review. See, e.g., Herzog v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 437 C.D. 2010, filed October 14, 2010), 2010 Pa. Commw. Unpub. LEXIS 691 (unreported) (petitioner's failure to provide legal citation did not waive uncomplicated argument that was factually developed); Arthur v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 593 C.D. 2009, filed October 20, 2009), 2009 Pa. Commw. Unpub. LEXIS 568 (unreported) (appellate court will not refuse to review an issue based solely on absence of legal citations, if the argument is sufficiently developed to permit meaningful review). These decisions are consistent with the provisions of Rule 2119(a) and offer persuasive authority on this issue. See 210 Pa. Code §69.414(a).

[10] At trial, the Trust expressly stipulated to the damages amount. The trial court required the Association to present its damages evidence solely because Developer did not specifically join

17

Trust offered no opposition at trial, in response to the Association's post-trial motion, or in its briefs submitted to this Court. The trial court expressly acknowledged the stipulation at trial, and later in its Rule 1925(a) Opinion. In these circumstances, the trial court was not free to disregard the parties' stipulation by entering judgment for a lower damages amount. Therefore, this Court vacates the judgment as to damages only, and remands to the trial court with a direction to enter judgment in favor of the Association in the stipulated amount of $905,985.

## IV. Conclusion

Based on the foregoing, this Court affirms the trial court's determination that the Trust was and remained a declarant under PUCA and thus was jointly and severally liable to the Association, along with Developer. We vacate

_____

that stipulation. However, Developer did stipulate (1) to damages in the amount shown at trial; and, (2) that it would offer no damages defense. The record reveals the following discussion at the time the Association called its damages expert:

> [Trust counsel]: Judge, <u>I just want to reiterate our offer to stipulate to the damages as Plaintiff has articulated them</u> which –
>
> THE COURT: The only trouble is you stipulate to the damages but [Developer] has not. And [Developer] would have to deal with the judgment as well. So to keep the record complete, I think what that does is allows him to put it on and probably takes the need for you to cross-examine extensively.
>
> [Trust counsel]: Well, that certainly will not happen.
>
> THE COURT: That's for sure. So with that understanding though, make your record but you obviously don't have to stress credibility determination since there doesn't seem to be anyone to counter it ….

R.R. at 340a-41a (emphasis added).

18

the trial court's damages award and remand for entry of judgment in the stipulated amount of $905,985.

_____

ROBERT SIMPSON, Judge

Judge Cosgrove did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hillside Villas Condominium     :
Association, Inc.     :
    :
     v.     :    No. 615 C.D. 2017
    :
Bottaro Development Company,     :
Mervin E.S. Resnick and Joyce K.     :
Resnick Irrevocable Trust, John L.     :
Bottaro, Lawrence J. Bottaro, Bottaro     :
Construction Company     :
    :
Appeal of:  Mervin E.S. Resnick and     :
Joyce K. Resnick Irrevocable Trust     :

Hillside Villas Condominium     :
Association, Inc.,     :
                Appellant     :
    :
     v.     :    No. 616 C.D. 2017
    :
Bottaro Development Company,     :
Mervin E.S. Resnick and Joyce K.     :
Resnick Irrevocable Trust, John L.     :
Bottaro, Lawrence J. Bottaro, Bottaro     :
Construction Company     :

## O R D E R

**AND NOW**, this 16th day of January, 2018, the order of the Court of Common Pleas of Dauphin County is **AFFIRMED IN PART**.  The trial court's damage(s) award is **VACATED.**  This matter is **REMANDED** to the trial court to enter judgment in the amount of $905,985 in favor of Hillside Villas Condominium Association, Inc. and jointly and severally against Bottaro Development Company and Mervin E.S. Resnick and Joyce K. Resnick Irrevocable Trust on the Hillside Villas Condominium Association, Inc.'s complaint.  The trial court is further

directed to amend its judgment in favor of the Mervin E.S. Resnick and Joyce K. Resnick Irrevocable Trust and against Bottaro Development Company on the Mervin E.S. Resnick and Joyce K. Resnick Irrevocable Trust's cross-claim and to enter judgment thereon in the amount of $905,985.  In all other respects, the trial court's order is **AFFIRMED**.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge