# Alexander *v.* Zerbe Township Poor District, Appellant.

*Poor law—Contract—Furnishing "Pasteur Treatment"—Authority of directors.*

The overseers of a poor district have authority to enter into a contract to secure the "Pasteur Treatment" for residents of the poor district who had been bitten by a mad dog, and in an action against the district to recover the price of such treatment, the plaintiff is not obliged to furnish affirmative proof that the persons to whom the treatment was administered were indigent persons. The overseers will be presumed to have acted within the scope of their power, and if they have furnished treatment to persons not entitled to it, they are answerable for a breach of duty to the district which they officially represent.

Argued Oct. 26, 1915.   Appeal, No. 135, Oct. T., 1915, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1914, No. 285, on verdict for plaintiff in case of Dr. H. M. Alexander & Co. v. Zerbe Twp. Poor District, Northumberland County, Wm. Haupt and James Sheetz, Overseers.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Assumpsit to recover for Pasteur treatment.   Before MOSER, J.

From the record it appeared that on December 5, 1913, several persons were bitten by a mad dog in Zerbe Township, and the treatment was ordered for these persons. The testimony relating to the contract made with the plaintiff by the overseers is set forth in the opinion of the Superior Court.

The defendant presented, inter alia, the following points:

1. It not having been shown in this case that the persons to whom the plaintiff administered the Pasteur antirabic treatment were indigent persons, and the plaintiff

cannot recover, and the verdict of the jury must be for the defendants.

Answer. That is refused as drawn. I have already said to you that the position that is taken by the defendant in that point would indicate that the burden is on the plaintiff to show that they were indigent persons; but I say to you; that is not the law. This is not an ordinary case of relief in its general sense, that is providing maintenance and provisions and assistance to persons who are needy and too poor to support themselves. This is regarded in the law as an emergency case. The various acts of assembly on the question are passed, and the law is established, in order to prevent the development of a disease which is admitted to be very serious and also to prevent the spreading of it, that is, the communication of it. It being infectious, or contagious, it might be communicated from one person to another, so that the purpose of the law is to prevent that as far as possible and to provide prompt and efficient treatment for those who possibly are unable to provide for themselves. A person might be able to procure the necessaries of life, and might be able to live without any aid from the poor district, but not all men are prepared to procure or obtain treatment of this kind at all times, or when required, and when it is required it must be administered with reasonable promptness in order to prevent the development. So all those facts are to be taken into consideration by you; the nature of the disease, and the reasonable and proper way that it should be treated, with promptness and intelligence. Indeed, this disease is treated usually only by institutions of this kind, or rather by people who handle this serum; not by the ordinary physician, in other words. A man bitten by a mad dog could not be treated by an ordinary physician, unless through some place of this kind where they manufacture this serum. (1)

2. There having been no previous order of relief from two justices of the peace for the persons treated by the

plaintiff, and no subsequent order of approval from two justices of the peace of the plaintiff's claim, the plaintiff cannot sustain this action against the poor district, defendant, and the verdict of the jury must be for the defendant.

Answer. That is refused as drawn for the present. That is a legal question entirely, and might be taken up even later regardless of what your verdict might be. (2)

Verdict and judgment for plaintiff for $318. Defendant appealed.

*Errors assigned,* among others, were (1, 2) above instructions quoting them.

*William W. Ryon,* for appellants.—A township cannot be made chargeable with the expense of maintaining a pauper otherwise than by the previous order of two justices of the peace: Overseers v. Baker's Executors, 2 Watts 280; Directors of Poor v. Wallace, 8 W. & S. 94; Gibson v. Plum Creek Twp. Poor Dist., 122 Pa. 557.

If a township is not legally liable for the maintenance of a pauper a promise of the overseers cannot impose that responsibility upon it: Del. Twp. v. Greenwood Twp., 66 Pa. 63.

*J. Fred Schaffer,* for appellee, cited: Danville Hospital v. Overseers, 163 Pa. 175.

OPINION BY HEAD, J., July 18, 1916:

The plaintiff, having provided what is known as the "Pasteur treatment" for several persons who had been bitten by a dog and who resided in the defendant poor district, brought this action to recover the money value of such treatment. The statement of claim avers the treatment was furnished "at the special instance and request of the said overseers," who promised to pay for the same. The affidavit of defense denies the defendant district or its overseers ever ordered such treatment; ever

authorized any one to do so for them, or ever promised to pay for the same. The issue thus raised by the pleadings was unquestionably one of fact and cast upon the plaintiff the burden of establishing by evidence the contract alleged in the statement.

Dr. Wilkinson was the local physician residing in the defendant district, to whom the injured persons applied for professional aid. He testifies that, being of opinion they required the special treatment already referred to, he laid the matter before the overseers of the defendant poor district; that they held the matter under consideration for a day or two to enable them to be advised by their counsel and then directed him to order the treatment, which he accordingly did. He is corroborated by the testimony of the witness Sweitzer, and still further by the correspondence between the plaintiff and the defendants which was offered in evidence. In a letter from the plaintiff to the overseers, dated December 5, 1913, the latter were advised that on the order of Dr. Wilkinson "initial doses for six pasteur anti-rabic treatments had been forwarded." The letter then stated "We understand that your board will make settlement for these treatments, at the rate of $50.00 each and invoice will therefore be rendered at the completion of the same. In case our understanding of the matter is not correct, we trust you will advise us at once." No reply was made contravening this understanding. In a letter from William Haupt, one of the overseers, to the plaintiff, under date of December 8th, we find: "Please send us a bill of the anti-rabic treatments, as we have to have to make settlement with our auditor on recd. bill. We will send check for the amount." In a letter from the overseers to the plaintiff, under date of January 3d, we have the following: "Your bill of the 3 in. We would state to you that we had to notify the parties to make settlement with us so it will take a little time, so you will please allow us time to make settlement with you, as the law only allows the overseers of the poor to pay for them

that is too poor to pay." Manifestly, the testimony referred to, offered by the plaintiff, was legally sufficient to require the learned trial judge to submit the case to the jury on the issue of fact raised by the pleadings. We regard the manner of the submission as fair and impartial, and the verdict of the jury has therefore established there actually was a contract between the plaintiff and the defendant overseers for the furnishing of the treatment and for the payment of the same.

But it is urged upon us that even if such contract be established, there still remains a legal obstacle in the way of the plaintiff's recovery because no affirmative proof was offered by the plaintiff to show that the persons to whom the treatment was administered were indigent persons. It is quite true the Act of 22d April, 1913, P. L. 111, declares it to be the duty of the officers or directors, who are charged by law with the relief and maintenance of the poor and indigent of the county, to provide such treatment for all indigent persons domiciled within the said district, &c. But this language of the act does not cast upon the plaintiff in such cases the burden of affirmatively proving the persons treated were indigent. Those who are competent to furnish such treatment are usually to be found in the larger centers of population, often far distant from those requiring its benefit. The overseers of the poor, in their respective districts, are the officers empowered by law to make contracts binding upon their respective districts. In making such contracts they are of course bound by the limitations prescribed by the law in defining their duties and powers. Now it is apparent that a contract of the character of the one established by the evidence was within the scope of the powers conferred by the law on the overseers of a poor district. This being so, the presumption would be, in the absence of any evidence to repel it, that in making such contract they had done what was required by the law in authorizing them to make it. As was well said by the learned trial court in overruling the

motions for a new trial and for judgment non obstante veredicto: "This is an emergency act. The passage thereof was for the purpose of preventing the development and spreading or communication of a very dangerous and much dreaded disease. Prompt action is imperative. Otherwise all effort to prevent the mischief and carry out the intent of the act would be fruitless and unavailing."

Such a statute, under all of the cases, must not be subjected to a construction that would destroy the beneficent intent of the lawmakers. But we are not left without ample authority as to what the law is in such a case and therefore need not elaborate the reasoning which would support the principle stated. In Danville Hospital v. Bellefonte Overseers, 163 Pa. 175, the defendant poor district sought to escape payment for the maintenance of certain persons sent by them to the plaintiff hospital on the theory that it was not shown by the proof that the persons so sent had been formally placed under the charge of the overseers by a precedent order of relief. Or, to quote the language of Mr. Justice GREEN, in stating the contention of the poor district: "In other words the plaintiff was bound to prove, not only that the paupers were sent, or delivered to them by the overseers, to be cared for and maintained, but also that, as between the overseers and the poor district, they had the paupers in charge by means of an order of relief, or a subsequent order of approval." Further along in the same opinion it is said: "If they (the overseers) are guilty of any dereliction of duty they may be answerable as for a breach of duty to the district which they officially represent. But as to other persons having dealings with them within the time or scope of their authority, surely it cannot be required that they shall be obliged first to institute an inquiry into the regularity of the official action of these 'constituted authorities,' before they may contract with them.......The maxim omnia præsumuntur rite esse acta requires that their acts are presumed to be

rightly done, without specific proof to that effect." The same principle was held to be sound in Oakland Township v. Martin, 104 Pa. 303; Harshman v. Dunbar Township, 11 Pa. Superior Ct. 638, and many other cases. We are of opinion the position on which the defendants rest this branch of the case is untenable.

Upon a review of the entire record we discover no sound reason for interfering with the judgment in this case and we accordingly dismiss the assignments of error.

Judgment affirmed.