McLogie Properties Inc.,        :
          Appellant       :
                            :
        v.                 :
                            :
Kidder Township Zoning     :   No. 1136 C.D. 2021
Hearing Board             :   Submitted: June 7, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE FIZZANO CANNON       FILED: June 30, 2023

      McLogie Properties Inc. (McLogie) appeals from an order of the Court of Common Pleas of Carbon County (trial court) docketed on September 16, 2021. The trial court affirmed a May 2021 decision of the Kidder Township (Township) Zoning Hearing Board (ZHB) denying McLogie's request for variance relief. Upon review, we reverse the trial court's order.

## I. Background

      In June 2019, McLogie purchased an unimproved lot located in the Township. Reproduced Record (RR) at 256a & 317a-20a. On August 9, 2019,

McLogie filed a zoning permit application with the Township to build a three-story single-family residence on the property. RR at 44a; Township Br., App.

At that time, Robert Dobosh (Dobosh) was the Township's zoning and building/code enforcement officer. As such, Dobosh worked with McLogie during preliminary inspections of the property. *See* RR at 30a-31a, 227a & 271a. Dobosh then retired, and two different individuals filled his two positions: Cindy Norato (Norato) became the Township's zoning officer, and the Township outsourced the position of building/code enforcement officer to Dave Williams (Williams) of Building Inspection Underwriters. *See id.* at 31a, 226a-27a, 236a & 249a.

Norato approved McLogie's zoning application in September 2019 and issued McLogie a zoning permit for a house and deck on the property. RR at 46a & 226a. Once the zoning permit was in place as required, Willams issued McLogie a building permit in October 2019, which allowed McLogie to begin construction of the house and deck in accordance with the plan. *Id.* at 226a.

After construction was underway, McLogie discovered that the foundation's front elevation was approximately 11 feet lower than what had been portrayed in its original plans. RR at 261a & 272a. McLogie halted construction in November 2019 and sought guidance from Williams, who told McLogie to submit an updated plan to the Township showing McLogie's proposal for moving forward. *Id.* at 247a & 260a-63a. McLogie revised the plan to add a basement with a ceiling height of eight and one-half feet. RR at 261a-62a & 273a-75a. Williams approved the revised plan. RR at 247a-50a; Supplemental Reproduced Record (SRR) at 727b-28b. Williams neither informed Norato of the revised plan nor instructed McLogie to do so. Williams did not revoke the building permit that was in place.

2

McLogie completed construction according to the revised plan. RR at 263a-64a. Township personnel inspected the home multiple times while it was being built and then issued a certificate of occupancy to McLogie in July 2020. *Id.* at 66a & 263a-64a. However, Norato did not learn of the revised plan until Williams mentioned it in a telephone call in September 2020. *Id.* at 227a. In October 2020, Norato sent an enforcement notice to McLogie, asserting that McLogie had constructed the basement without obtaining a required zoning permit. *Id.* at 300a. Norato relied on Section 180-19 of the Township's Zoning Ordinance,[1] which limits the maximum height of all buildings on lots zoned R2 residential, like the McLogie property, to no more than 35 feet and 3 stories. *Id.* at 300a. With the added basement, the building exceeded both the height limit and the maximum number of stories. *Id.*

McLogie appealed the enforcement notice to the ZHB and also sought a variance for the home as already constructed. RR at 303a-06a & 314a-15a. The ZHB held a public hearing in April 2021, at which both Norato and Williams testified.

Norato explained that she had issued a zoning permit to McLogie in September 2019 based on the original plan, had been unaware of the revised plan until September 2020, and had promptly issued a citation once she learned of McLogie's noncompliance with the Zoning Ordinance. RR at 222a, 225a-32a, 234a-35a & 238a-39a. Norato admitted that no one had informed McLogie in 2019 that Dobosh's responsibilities had been divided between Norato and Williams, and she acknowledged that this lack of communication may have caused some confusion. *Id.* at 235a-37a.

---

[1] Kidder Township Zoning Ordinance, Carbon County, Pa., *as amended* (2017).

3

Williams testified that as the Township's building/code enforcement officer, he had no authority to compel compliance with the Zoning Ordinance.[2] RR at 246a-48a. He stated that he had reviewed the revised plan only for compliance with the Pennsylvania Construction Code Act.[3] *Id.*

One of McLogie's principals, Kevin Kolodgie (Kolodgie), testified that the company's representatives had been unaware that they needed separate zoning approval from Norato, as they had dealt solely with Williams after Dobosh's retirement and had believed that only Williams's approval was needed for construction to move forward. RR at 260a-66a. Kolodgie also estimated that bringing the home into compliance with the Zoning Ordinance's height restrictions would cost more than $50,000. *Id.* at 266a. Thomas O'Connell, a contractor employed by McLogie for the project, likewise testified that he and other McLogie representatives had discussed the need for a revised plan with Williams in 2019 and had gone to Williams for guidance and for approval of the revised plan. *Id.* at 272a-74a.

In April 2021, the ZHB denied both McLogie's appeal of the zoning enforcement notice and its request for a dimensional variance. RR at 298a, 393a. In its subsequent written decision in May 2021, the ZHB found McLogie's evidence concerning Williams's approval of the revised plan to be neither credible nor probative. The ZHB also determined that the Township had provided adequate reasons for issuing the enforcement notice. The ZHB held that McLogie had failed to satisfy the standard for obtaining a dimensional variance, was not entitled to a

---

[2] However, as discussed in Section II, the building/code enforcement officer has related responsibilities, such as informing the applicant of all needed permits (including zoning permits) and revoking or refusing to issue a building permit until a needed zoning permit has been obtained.

[3] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101-7210.1103.

4

variance by estoppel or a vested right variance, and had waived its right to obtain relief via equitable estoppel. ZHB Decision, Findings of Fact (F.F.) ¶¶ 36-44; Conclusions of Law (C.L.) ¶¶ 6-17.

McLogie appealed the ZHB's decision to the trial court, asserting that McLogie was entitled to a variance by estoppel or, in the alternative, that the Township was equitably estopped from enforcing the Zoning Ordinance's height and story restrictions in this instance. RR at 21a-24a & 404a-17a. The trial court took no additional evidence. In an order docketed on September 16, 2021, the trial court denied McLogie's appeal. Trial Ct. Order, 9/16/21 at 1-2. The trial court determined that McLogie had properly preserved its equitable estoppel claim but that substantial evidence supported both the ZHB's denial of relief under that theory and its refusal to grant McLogie a variance by estoppel. *Id.* McLogie then appealed to this Court.

## II. Discussion

On appeal to this Court, McLogie repeats its assertions that the ZHB abused its discretion by denying a variance by estoppel and, similarly, by failing to conclude that with regard to the property at issue, the Township was equitably estopped from enforcing the Zoning Ordinance's restrictions on residential building heights and number of stories. McLogie's Br. at 19-30. The material facts are undisputed; thus, these assertions present issues of law.[4] We agree with McLogie that it is entitled to a variance by estoppel and, in the alternative, that the ZHB should

---

[4] Where a trial court reviewing a zoning decision takes no additional evidence, our review is limited to a determination of whether the ZHB committed an abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). However, where the issues presented on appeal are questions of law, our standard of review is *de novo* and the scope of review is plenary. *City of Clairton v. Zoning Hearing Bd. of Clairton*, 246 A.3d 890, 896 n.8 (Pa. Cmwlth. 2021) (citing *Braun v. Wal-Mart Stores, Inc.*, 106 A.3d 656, 663 n.8 (Pa. 2014)).

5

be equitably estopped from enforcing the height and story restrictions of the Zoning Ordinance under the circumstances of this case.[5]

The ZHB insists that neither a variance by estoppel nor equitable estoppel is available to McLogie. The ZHB suggests that McLogie, rather than the building/code enforcement officer, was required to inform the zoning officer of the changes to the construction plan, and that McLogie knew or should have known it had to get zoning approval separate and apart from the building/code enforcement officer's approval. ZHB Br. at 2. We reject these assertions by the ZHB.[6]

---

[5] Although McLogie has not couched its argument in terms of a vested right, we note that the circumstances here satisfy the requirements for relief on that ground, as well: (1) due diligence in attempting to comply with the zoning ordinance; (2) good faith throughout the proceedings; (3) expenditure of substantial unrecoverable funds; (4) expiration, without appeal, of the period during which an appeal could have been taken from approval of the permit; and (5) failure to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit. *Petrosky v. Zoning Hearing Bd. of Upper Chichester Twp.*, 402 A.2d 1385 (Pa. 1979).

[6] We note that McLogie's legal argument contains few citations of authority, which raises a potential waiver under Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(a). As this Court has explained, however:

> Rule 2119(a) . . . does not mandate citations to authority for every argument. The rule requires parties to support their arguments with "such discussion and citation of authorities as are deemed pertinent." [Pa.R.A.P. 2119(a).] This Court declines to find waiver of arguments that contain no legal citations but are otherwise sufficiently developed to allow meaningful appellate review. *See, e.g.*, *Herzog v. Unemployment Comp. Bd. of Rev*[.] (Pa. Cmwlth., No. 437 C.D. 2010, . . . filed October 14, 2010), . . . (petitioner's failure to provide legal citation did not waive uncomplicated argument that was factually developed); *Arthur v. Unemployment Comp. Bd. of Rev*[.] (Pa. Cmwlth., No. 593 C.D. 2009, . . . , filed October 20, 2009), . . . (appellate court will not refuse to review an issue based solely on absence of legal citations, if the argument is sufficiently developed to permit meaningful review). These decisions are consistent with the provisions of Rule 2119(a) and offer persuasive authority on this issue. *See* 210 Pa. Code §69.414(a).

## A. Variance by Estoppel

A party seeking a variance by estoppel must satisfy four elements: (1) the municipality's failure to enforce the zoning ordinance for a long period, when the municipality knew or should have known of the violation but acquiesced in the illegal use; (2) good faith and innocent reliance by the landowner on the validity of the use throughout the proceedings; (3) substantial expenditures by the landowner in reliance on the belief that the use was permitted; and (4) unnecessary hardship from denial of the variance, such as the cost to demolish an existing building. *Skarvelis v. Zoning Hearing Bd. of Dormont*, 679 A.2d 278, 281 (Pa. Cmwlth. 1996).

Here, regarding the first element, acquiescence by the municipality, there is no dispute that the Township failed to enforce the zoning ordinance's height and story restrictions for a year while construction was ongoing, and that, during that time, the Township knew about the change in the building plan, conducted multiple inspections as the construction progressed, and issued an occupancy permit for the finished house. Although a year of inaction is a comparatively short time to support this element, the ongoing construction, the Township's knowledge, and Williams's

---

*Hillside Villas Condo. Ass'n v. Bottaro Dev. Co.*, 177 A.3d 456, 465 n.9 (Pa. Cmwlth. 2018).

Here, McLogie's argument presented a sufficiently developed argument to allow meaningful appellate review, as well as to preserve the issue it raised. McLogie cited and quoted multiple admissions by Township witnesses – facts that are not disputed – and cited, at least minimally, the requirements of the Uniform Construction Code, 34 Pa. Code §§ 401.1-405.42, as adopted by the Township. *See* Kidder Twp. Code, § 83-2 (adopting the Uniform Construction Code and incorporating it by reference). As explained further in the next section, those requirements include informing a building permit applicant of other permit requirements or approvals needed, as well as assuring that those other permits or approvals have been obtained before issuing a building permit. McLogie may not have cited the specific sections of the Uniform Construction Code and accompanying regulations on which it was relying, but it nonetheless stated the requirements of those sections and explained the Township's undisputed failure to meet those requirements. Accordingly, we will not decline to entertain McLogie's argument based on the lack of legal citations.

7

express approval of the revised building plan, along with the multiple inspections and the occupancy permit, all establish acquiescence by the Township. *Cf. Skarvelis*, 679 A.2d at 281-82 (citing *Knake v. Zoning Hearing Bd. of Dormont*, 459 A.2d 1331 (Pa. Cmwlth. 1983) (variance by estoppel where borough knew the use was impermissible for 27 years but issued a building permit for the impermissible use); *Three Rivers Youth v. Zoning Bd. of Adjustment for the City of Pittsburgh*, 437 A.2d 1064 (Pa. Cmwlth. 1981) (inaction by municipality for 7 years plus issuance of building permit by municipality and reliance by landowner on zoning officer's interpretation of zoning regulation); *Twp. of Haverford v. Spica*, 328 A.2d 878 (Pa. Cmwlth. 1974) (inaction by municipality for 36 years and issuance of building permit with knowledge of intended construction)).

Regarding the second element, good faith reliance by the landowner, the record establishes that no one told McLogie that Dobosh's former work functions had been divided between two separate people and were not being performed solely by Williams. Importantly, the applicable statute and regulations all appeared to indicate that the building code officer was responsible for approving the revised building plan. The Township adopted all of these provisions and incorporated them by reference in its code or ordinances when it adopted the Uniform Construction Code. Kidder Twp. Code, § 83-2.

> The applicable statutory provision states, in pertinent part:
>
> A *code administrator* shall review a construction plan of a building permit application upon submission and shall issue a notice of construction plan approval on a building permit application within the periods set forth in this section if the construction plans comply with the Construction Code Act and any other applicable municipal construction code ordinance. The *municipality shall also provide a list of all other required permits* necessary *prior*

8

*to issuance of the building permit*. The municipality will not be liable for the completeness of any list. When a construction plan has been approved, a *code administrator* shall issue a building permit immediately *upon receipt of all other required permits or approvals* related to the construction . . . .

Section 502(a)(1) of the Construction Code Act, 35 P.S. § 7210.502(a)(1) (emphasis added). A "code administrator" is "[a] municipal code official, a *construction code official*, *a third-party agency* or the Department of Labor and Industry." Section 103 of the Construction Code Act, 35 P.S. § 7210.103 (emphasis added). Thus, Williams, as a construction code official employed by Building Inspection Underwriters, the Township's contracted third-party agency, was the Township's "code administrator" with the statutory responsibilities accompanying that title. Three important requirements emerge from this provision: (1) the building/code enforcement officer was the primary contact and *the person responsible to assure that other needed permits or approvals* had been procured before issuing a building permit; (2) the *Township was required to inform McLogie of all required permits – not the converse*; and (3) all such permits had to be obtained *before the code officer issued a building permit*.

The building/code enforcement officer's function in this regard is underscored by the following related Uniform Construction Code provisions:

§ 403.62. Permit requirements and exemptions.

(a) An owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish or change the occupancy of a residential building or erect, install, enlarge, alter, repair, remove, convert or replace an electrical, gas, mechanical or plumbing system regulated by the Uniform Construction Code shall *first apply to the building code official* and obtain the required permit under § 403.62a (relating to permit application). [Emphasis added.]

9

34 Pa. Code § 403.62(a).

> § 403.62a. Permit application.
>
> (a)   Applications for a permit required under § 403.62 (relating to permit requirements and exemptions) shall be *submitted to the building code official* in accordance with this section.
>
> (b)  A permit applicant shall *submit an application to the building code official* and attach construction documents with plans and specifications *and all other permits or approvals* related to the construction required by § 403.102(n) (relating to municipalities electing to enforce the Uniform Construction Code).
>
> . . . .
>
> (e)   The application must contain a site plan showing the size and location of the new construction and existing structures on the site and the structures' distance from lot lines.  If the construction involves demolition, the site plan must indicate construction that is to be demolished and the size and location of existing structures and construction that will remain on the site or plot.  *A building code official* may waive or modify the site plan requirement when the permit application is for an alteration or a repair or if the waiver is warranted for other reasons.  [Emphasis added.]

34 Pa. Code § 403.62a(a), (b) & (e).

> § 403.63. Grant, denial and effect of permits.
>
> (a)  A *building code official shall grant or deny a permit* application, in whole or in part, within 15 business days of the filing date or the application is deemed approved.  If the drawings were prepared by a design professional who is licensed or registered under the laws and regulations of the Commonwealth and the application contains a certification by the licensed or registered design professional that the plans meet the applicable standards of the Uniform Construction Code and ordinance as appropriate, a *building code official shall grant or deny a permit application*, in whole or in part, within 5 business days of the filing date or the application is deemed

10

approved. Reasons for denial must be in writing, identifying the elements of the application which are not in compliance with the relevant provisions of the Uniform Construction Code and ordinance as appropriate and providing a citation to the relevant provisions of the Uniform Construction Code and ordinance as appropriate, and sent to the permit applicant. The building code official and the applicant may agree in writing to extend the deadline by a specific number of days.

(b) *A building code official shall examine the construction documents and shall determine whether the construction indicated and described is in accordance with the Uniform Construction Code and other pertinent laws or ordinances as part of the application process*. [Emphasis added.]

34 Pa. Code § 403.63(a) & (b).

§ 403.65. Certificate of occupancy.

(a) A residential building may not be used or occupied without a certificate of occupancy issued by *a building code official*.

(b) A *building code official shall issue a certificate of occupancy* after receipt of a final inspection report that indicates compliance with the Uniform Construction Code and ordinance within 5 business days or within 10 business days in cities of the first class . . . . [Emphasis added.]

34 Pa. Code § 403.65(a) & (b).

§ 403.102 Municipalities Electing to Enforce the Uniform Construction Code

. . . .

(n) A municipality will *provide a list of all other required permits necessary before issuance of the building permit*. A municipality will not be liable for the completeness of any list. [Emphasis added.]

34 Pa. Code § 403.102(n).

11

The Uniform Construction Code provisions above demonstrate that an applicant for a building permit does not inform the Township that additional zoning approval is required for a revised plan; the Township informs the applicant. Here, the building permit was issued in October 2019 by Williams, the Township's building/code enforcement officer. As the Uniform Construction Code indicates, *the building permit could not have been issued if the necessary zoning permits or approvals had not been obtained first*.[7] *See* 34 Pa. Code §§ 403.62(a); 403.62a(a), (b) & (e); 403.63(a) & (b); 403.65(a) & (b); 403.102(n). It was the Township's duty to assure that those approvals were in place.

Similarly, the building permit could be revoked only by the building code official following a change in the construction plan if he determined that the change mandated additional permit approvals. The Construction Code Act requires a code administrator to review a construction plan to confirm the issuance of all other required permits before approving the construction and issuing a building permit. 35 P.S. § 7210.502. Thereafter, "[a]ll revisions or changes to construction plans so

---

[7] We note that the Township's web page relating to zoning and development regulations states:

> Attention:
>
> Kidder Township is contracted with Building Inspection Underwriters of Pennsylvania, Inc. [(BIU)] to issue all Township Building Permits and provide services such as review of plans and other construction documents, inspect construction, plumbing and mechanical inspections. Please be advised that BIU will not commence work on building permits until Kidder Township has first issued a zoning permit authorizing such work and shall not take any action until all fees are paid and all required documents are properly submitted.

Kidder Twp., "Zoning and Building," https://kiddertownship.org/zoning-and-building/ (last visited June 29, 2023).

12

approved . . . shall necessitate an additional plan review prior to the issuing of the building permit." *Id.* The clear import of this statute is that the code administrator must review all plan changes to determine whether all other necessary permits have been obtained, just as he reviewed the original plan. *See id.* If the plan changes require additional permits, the code administrator must either withhold approval of the changes or revoke the building permit pending the issuance of the additional permits. Pennsylvania courts have long applied the maxim *omnia praesumuntur rite esse acta*, which this Court has explained as follows:

> It is, as a general rule, presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require.

*Collier v. City of Phila.* (Pa. Cmwlth., No. 649 C.D. 2016, filed Mar. 6, 2017), slip op. at 9 n.10[8] (quoting *Beacom v. Robison*, 43 A.2d 640, 643 (Pa. Super. 1945))[9] (quotation marks omitted). Our courts have applied this maxim in various contexts.

For example, in *Harshman v. Dunbar Township*, 11 Pa. Super. 638, 642-44 (1899), a township had a standing contract for road repair under which the regular contractor failed to perform. A statute required the township to give the regular contractor advance notice and an opportunity to cure its breach before hiring a new contractor. Thus, the township argued that its agreement with the new contractor was invalid and it did not have to pay him. However, the Superior Court explained that the new contractor could rely on its agreement with the township and

---

[8] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

[9] Superior Court decisions are persuasive authority for this Court. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

13

had no duty to inquire whether the proper notice had been given to the original contractor before he accepted a contract from the township:

> He had the right to presume that the preliminary acts necessary to enable the [township] commissioners to enter into the contract had been performed by them. It was not his imperative duty to inquire of the contractors whether or not the notice required by the act had been given. That was an official duty incumbent upon the commissioners. When the commissioners made the contract, they must be deemed to have asserted that the preliminaries necessary to the making of that contract had been performed. As was said in the argument of the appellee, the plaintiff was bound to know the law, but he was not bound to know facts. As to the latter, so far as the duties of the commissioners were concerned, he could rightfully presume their existence and that the duties of the commissioners under the law had been performed.

*Id.* at 644. Similarly, in *Danville State Hospital for the Insane v. Bellefonte Borough Overseers of the Poor*, 129 A. 901 (Pa. 1894), our Supreme Court held that, where a borough's overseers of the poor had statutory authority to send insane paupers to a state mental hospital, others dealing with the overseers were not required to inquire into the regularity of their official actions before accepting and expecting payment for such patients; the overseers' acts were presumed to be rightly done. *Id.* at 902 & 904. *See also Alexander v. Zerbe Twp. Poor Dist.*, 63 Pa. Super. 356, 359, 361-62 (1916) (holding that a doctor contracted to provide medical services to the poor was entitled to payment and was not required to inquire into the regularity of the overseers' directive that he provide shots to specific patients; the overseers' acts were presumed to be rightly done).

Here, as set forth above, before approving the change in the construction plan, the Township, through its code administrator, had a legal duty to ascertain whether a new zoning permit would be required for the particular plan

14

change. *See* 35 P.S. § 7210.502. Notably, the Township's duty also included the *Zoning Officer's* obligation to inspect the construction for compliance with the zoning ordinance before a certificate of use[10] was issued. Kidder Twp. Code § 180-170.G.(3) (mandating that "[t]he Zoning Officer shall inspect such structure or land related to an application for [a] certificate [of use]. If the Zoning Officer determines . . . that such work conforms with this chapter and applicable Township codes, approvals and permits, then the certificate of use shall be issued."). We therefore conclude that the maxim *omnia praesumuntur rite esse acta* should be applied in this case as well. Thus, as a matter of law, McLogie was entitled to assume the Township had performed its statutory and regulatory duties to assure that the plan change complied with applicable zoning. Accordingly, as a matter of law, McLogie acted reasonably in relying on Williams's approval of the revised building plan, Williams's failure to revoke the existing permit upon plan revision, the Township's acquiescence in the construction under the originally issued building permit, and the Township's subsequent issuance of the occupancy permit. The trial court erred in viewing McLogie's reasonable reliance as a question of fact and ruling on that issue on the basis of a credibility finding. The law provided the basis for McLogie's reliance.

Regarding the third element, substantial expenditures in reliance on the validity of the use, McLogie built a basement with an eight and one-half foot ceiling in reliance on the validity of its building permit. Regarding the fourth element, unnecessary hardship from denial of a variance, there was testimony that McLogie

---

[10] The Township's zoning ordinance defines a "certificate of use" as "[a] document issued by the Township stating that a newly constructed or altered building, structure, and/or use complies with [the zoning ordinance]." Kidder Twp. Code § 180-12. Although the Kidder Township Code does not define an "occupancy permit," the two terms appear to be synonymous.

15

would have to expend about $50,000 to fill in the basement. Thus, the last two elements are related here, in that McLogie incurred additional construction expense to build the basement and would incur substantial additional expense again in order to fill and regrade the area. Both expenses could have been avoided had the Township followed its own ordinance provisions.

Finally, we note that the record does not suggest that the height and story violations create any practical problem of obscuring anyone's view or access to light and air. Indeed, the Township's proposed solution is not to reduce the height of the residence by removing the upper story, but rather, to fill in and raise the ground level so as to eliminate one of the home's exits, that from the basement level – in other words, to raise the ground, not lower the building. Such a requirement would make no difference in the height of the house in relation to neighboring structures.

In summary, the original plan here did not require any zoning relief before the original building permit was issued. Later, an issue arose regarding the front elevation of the property, and a basement was added to the plan. The revised plan showing the change was presented to the same building/code enforcement officer in November 2019 and he, at a minimum, approved the new foundation for the basement at that time. The same building/code enforcement officer did not indicate that any zoning relief was required or that another plan needed to be submitted. The Township did not revoke the building permit, which it should have done if it believed zoning relief was required in connection with the building plan change shown in the new plan. Instead, the Township allowed McLogie to continue to build under the prior building permit over the next nine months. The Township inspected the property multiple times while it was being built. The Township issued a certificate of occupancy for the property in July 2020, indicating that the property

16

was in compliance with Township codes and ready for use. In September 2020, the zoning officer realized that the property was not in compliance as built, and in October 2020, almost a year after approval of the revised building plan, the zoning officer issued an enforcement notice. Denial of a variance by estoppel under these undisputed facts was an error of law.

## B. Equitable Estoppel

Refusal to apply equitable estoppel here was also an error of law. We recognize that the Township cannot be "liable" under the Uniform Construction Code for failing to notify McLogie of the need for zoning relief. 35 P.S. § 7210.502(a); *see also* 34 Pa. Code § 403.102(n). However, that does not mean that the Township cannot be equitably estopped from imposing an untimely zoning requirement. Black's Law Dictionary defines "liable" as: "1. Responsible or answerable in law; legally obligated . . . . 2. Subject to or likely to incur a fine, penalty, etc." *Liable,* Black's Law Dictionary (11th ed. 2019). By contrast, it defines "estoppel" as:

> 1. A bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true. . . . 3. An affirmative defense alleging good-faith reliance on a misleading representation and an injury or detrimental change in position resulting from that reliance.

*Estoppel,* Black's Law Dictionary (11th ed. 2019). Thus, the two terms are not interchangeable. A provision restricting the Township's liability should not be read as precluding the application of estoppel principles where appropriate.

Equitable estoppel may arise from "an informal promise implied by one's words, deeds, or representations" that induces reasonable reliance by another to his detriment. *In re Jackson*, 280 A.3d 1074, 1083 (Pa. Cmwlth. 2022). Thus,

17

the two essential elements of equitable estoppel are inducement and justifiable reliance. *Belleville v. David Cutler Grp.*, 118 A.3d 1184, 1199 (Pa. Cmwlth. 2015). Equitable estoppel may be asserted against the government. *Jackson*, 280 A.3d at 1083; *see also Chester Extended Care Ctr. v. Dep't of Pub. Welfare*, 586 A.2d 379, 382 (Pa. 1991). "The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced." *Belleville*, 118 A.3d at 1199 (quoting *Zitelli v. Dermatology Educ. & Rsch. Found.*, 633 A.2d 134, 139 (Pa. 1993)); *see also Jackson*, 280 A.3d at 1083.

Here, McLogie relied to its detriment on Williams's approval of the revised construction plan, failure to revoke the building permit upon plan revision, and failure to inform McLogie that additional zoning approval must be sought; it also relied on the Township's multiple inspections during the construction, and the issuance of an occupancy permit when construction was complete. If the ZHB is allowed to enforce the zoning ordinance against McLogie now, the property either cannot be used, or extreme measures must be taken. Either will be a clear detriment to McLogie.

For these reasons, we conclude that McLogie has established both inducement and reliance. Accordingly, besides a variance by estoppel, McLogie is also entitled, in the alternative, to the application of the doctrine of equitable estoppel to preclude the Township from enforcing the height and story limitations to the building construction at issue. The ZHB and the trial court erred by concluding otherwise.

### III. Conclusion

Based on the foregoing discussion, we conclude that McLogie is entitled to a variance by estoppel, and further, that the ZHB is equitably estopped from enforcing the zoning ordinance's height and story limitations against McLogie in the circumstances of this case. Accordingly, the trial court's order affirming the ZHB's decision is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

McLogie Properties Inc.,                      :
                   Appellant       :
                                           :
          v.                          :
                                           :
Kidder Township Zoning              :      No. 1136 C.D. 2021
Hearing Board                             :

# O R D E R

AND NOW, this 30th day of June, 2023, the order of the Court of Common Pleas of Carbon County docketed on September 16, 2021 is REVERSED.

 

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

McLogie Properties Inc.,             :
                    Appellant        :
                                     :
        v.                           :  No. 1136 C.D. 2021
                                     :
Kidder Township Zoning Hearing       :
Board                                :  Submitted: June 7, 2023


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


DISSENTING OPINION
BY JUDGE CEISLER                                    FILED:  June 30, 2023

        I respectfully dissent from the majority's conclusion that Appellant McLogie

Properties Inc. (McLogie) is entitled to estoppel-based relief regarding its revised

plans. This is for two reasons. First, from a procedural standpoint, I believe that

McLogie has waived this argument. As our Supreme Court has explained,

> our rules of appellate procedure are explicit that the
> argument contained within a brief must contain "such
> discussion and citation of authorities as are deemed
> pertinent." Pa. R.A.P. 2119(a). "[W]here an appellate brief
> fails to provide any discussion of a claim with citation to
> relevant authority or fails to develop the issue in any other
> meaningful fashion capable of review, that claim is
> waived. It is not the obligation of [an appellate court . . . ]
> to formulate [an a]ppellant's arguments for him." *Com*[.]
> *v. Johnson*, . . . 985 A.2d 915, 924 ([Pa.] 2009) (internal
> citations omitted). Moreover, because the burden rests
> with the appealing party to develop the argument
> sufficiently, an appellee's failure to advocate for waiver is
> of no moment. *See Connor v. Crozer Keystone Health
> Sys.*, 832 A.2d 1112, 1118 (Pa. Super. 2003).

*Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014).

Here, McLogie argued that Dave Williams, Kidder Township's building/code enforcement officer, was legally required to notify it regarding the need for additional zoning approvals, but did not support this assertion with cites to specific ordinances or statutory provisions or, for that matter, any legal analysis. Instead, McLogie presented this argument through two passing references in its brief to the Uniform Construction Code (Uniform Construction Code or UCC),[1] which read as follows:

> Mr. Williams' testimony . . . reflects miscommunication related to the project. ([Reproduced Record (R.R.)] at 529a-254a). Mr. Williams testified that the "Pennsylvania UCC requires that I tell applicants for building permits that they might need to go through zoning and get a zoning permit for their work. That is the expressed limit of my responsibility regarding zoning." ([R.R.] at 248a). Yet, despite this requirement, Mr. Williams could not recall whether he advised McLogie of this or informed McLogie that [it] had to proceed separately with zoning. (*Id.*).

McLogie's Br. at 14.

> Here, the record is replete with evidence of negligence. (*See* Hearing Transcript, generally). Mr. Williams, as testified by himself, Ms. Norato, Kidder Township's zoning officer,] Mr. Kolodgie, [one of McLogie's principals,] and Mr. O'Connell, [a contractor employed by McLogie for the project,] approved the Revised Plans. (*See* [*i*]*d.*). Mr. Williams further advised McLogie following his approval that it was "good to go" with construction of the residence as modified. (*See* [*i*]*d.*). This was clearly a negligent misrepresentation on behalf of [Kidder] Township given the position taken by [Appellee Kidder Township Zoning Hearing Board (Board)] that Mr. Williams'[] authority related to building issues only (even though he, nor Ms. Norato, nor anyone else from [Kidder] Township ever advised McLogie that Mr. Dobosh's duties

---

[1] 34 Pa. Code §§ 401.1-405.42.

had been split between two individuals). (*See* [*i*]*d.*). Additional evidence of negligence by [Kidder] Township as detailed at length before includes:

. . . .

Mr. Williams never advised McLogie that it might have to get a zoning permit for the Revised Plans even though "Pennsylvania UCC requires" that information be conveyed. (*Id.* at 31:4-5, 50:10-20).

McLogie's Br. at 29-30. This discussion falls far short of what can be considered a sufficiently developed claim that Williams' putative failure to fulfill his alleged duties justifies relief in McLogie's favor by estoppel. Therefore, to the extent that such an argument could have been presented, McLogie has waived it.

Second, I believe that this argument, even if it had been properly presented to us, would not justify reversal. In general, local municipalities are vested with authority to adopt the UCC, through both the Construction Code Act[2] and the attendant regulations present in the Uniform Construction Code, via ordinance. *See* 35 P.S. § 7210.501(a);[3] 34 Pa. Code § 403.102. Kidder Township has exercised this authority by adopting the UCC by reference. *See* Kidder Twp. Code § 83-2.[4]

Under the UCC, applicants are required to apply for and obtain building permits from a municipality's building code official for things that are regulated under the UCC. *See* 34 Pa. Code §§ 403.62, 403.62a. The UCC delineates the building code official's authority and duties as follows, in relevant part:

(a) A building code official shall grant or deny a permit application, in whole or in part, within 15 business days of the filing date or the application is deemed approved. If the drawings were prepared by a design professional who

---

[2] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101-7210.1103.

[3] Section 501(a) of the Construction Code Act.

[4] Kidder Township Code, Carbon County, Pa., *as amended* (2005).

is licensed or registered under the laws and regulations of the Commonwealth and the application contains a certification by the licensed or registered design professional that the plans meet the applicable standards of the Uniform Construction Code and ordinance as appropriate, a building code official shall grant or deny a permit application, in whole or in part, within 5 business days of the filing date or the application is deemed approved. Reasons for denial must be in writing, identifying the elements of the application which are not in compliance with the relevant provisions of the Uniform Construction Code and ordinance as appropriate and providing a citation to the relevant provisions of the Uniform Construction Code and ordinance as appropriate, and sent to the permit applicant. The building code official and the applicant may agree in writing to extend the deadline by a specific number of days.

(b) A building code official shall examine the construction documents and shall determine whether the construction indicated and described is in accordance with the Uniform Construction Code and other pertinent laws or ordinances as part of the application process.

(c) A building code official shall stamp or place a notation on each page of the set of reviewed construction documents that the documents were reviewed and approved for Uniform Construction Code compliance before the permit is issued. The building code official shall clearly mark any required nondesign changes on the construction documents. The building code official shall return a set of the construction documents with this notation and any required changes to the applicant. The applicant shall keep a copy of the construction documents at the work site open to inspection by the construction code official or an authorized representative.

. . . .

(e) A building code official may issue a permit for the construction of the foundations or other parts of a building or structure before the construction documents for the whole building or structure are submitted if the permit applicant previously filed adequate information and detailed statements for the building or structure under the

Uniform Construction Code. Approval under this section is not assurance that the building code official will issue a permit for the entire building or structure.

(f) Issuance of a permit does not bar prosecution or other legal action for violations of the [Construction Code A]ct, the Uniform Construction Code or a construction ordinance. A building code official may suspend or revoke a permit issued under the Uniform Construction Code when the owner does not make the required changes directed by the building code official under subsection (c), when the permit is issued in error, on the basis of inaccurate or incomplete information or in violation of any act, regulation, ordinance or the Uniform Construction Code.

. . . .

34 Pa. Code § 403.63(a)-(c), (e)-(f). The Construction Code Act contains similar language and, in addition, explicitly states that a municipality must provide an applicant with a list of necessary permits prior to issuing a building permit, but cannot be held "liable" for the completeness of that list. *See* 35 P.S. § 7210.502(a).[5] Finally, the UCC states that a building code official shall issue a certificate of occupancy after receiving a final inspection report that shows compliance with the Uniform Construction Code and the municipality's ordinance adopting the UCC, but "*may suspend or revoke a certificate of occupancy when the certificate was issued in error, on the basis of incorrect information supplied by the permit applicant, or in violation of the Uniform Construction Code*." 34 Pa. Code § 403.65 (emphasis added).

Tying all of this statutory and regulatory language together leads to the following conclusions. First, a building code official is responsible for reviewing building plan applications to ensure that they comply with the UCC and any local construction code ordinances, and can approve such applications only in the event

_____

[5] Section 502(a) of the Construction Code Act.

EC - 5

that the official finds them to be compliant. Second, a building code official must also review applications to determine whether they comply with "other pertinent laws or ordinances," but *approval* of an application is only contingent upon its compliance with the UCC and local construction code ordinances. Third, before issuing a building permit, a municipality must provide an applicant with a list of what other permits they need to obtain, but the municipality cannot be held liable for the completeness of that list. In other words, a municipality cannot be held responsible if, for example, its officials issue a building permit but fail to inform an applicant that they also need to obtain additional zoning permits in order to move forward with the affected construction project. Finally, the issuance of a certificate of occupancy is only predicated upon whether the building has been inspected for compliance with the UCC, *not* upon whether the building is in compliance with *all* relevant laws and ordinances. Accordingly, McLogie had no legal basis to rely on Williams' approval of the revised plans, the subsequent issuance of a certificate of occupancy, and/or the fact that Williams did not tell McLogie that it needed to secure additional zoning approval, as proof that it was free to move forward with developing its parcel of land in accordance with the revised plans.

McLogie's only recourse, then, was to argue that it relied in good faith upon Williams' actions when forming the belief that it did not need to secure additional governmental review in order to move forward with construction, and thus was entitled to estoppel-based relief. The Board, in relevant part, concluded that

> [McLogie] knew it had to get zoning approval separate and apart from [Williams'] approval; [McLogie] specifically applied for a 34[-]foot[-]high building and submitted plans to [Norato] with only three (3) stories; and . . . the Zoning Permit itself was approved with the comment "as per submitted plans[,]" meaning [McLogie] had actual

knowledge that the Zoning Permit was only approved as per the plans showing three (3) stories.

Board's Decision, Conclusions of Law ¶¶6, 8. Furthermore, McLogie was, at minimum, put on notice by the zoning permit it received from Kidder Township on September 6, 2019, that Norato was Kidder Township's zoning officer, as well as that this permit only authorized the construction of a "[n]ew home & deck [a]s per [McLogie's] plot plan [for its property.]" R.R. at 46a; Kidder Twp.'s Br., App. As such, the Board did not abuse its discretion in determining that McLogie was not entitled to a variance by estoppel, because, in the Board's reasoned view, McLogie had not innocently relied upon Williams' approval of the revised plans and knew, or should have known, that the only way it could get zoning approval for its revised plans was through Norato, not Williams.[6]

Furthermore, though the Board erroneously concluded that McLogie had waived its equitable estoppel argument, that error is ultimately harmless. *See DiSanto v. Bd. of Comm'rs of Susquehanna Twp.* (Pa. Cmwlth., No. 679 C.D. 2016, filed June 1, 2017), slip op. at 4-6, 2017 WL 2376522, at *2;[7] *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002). What is fatal to that claim is the same thing that deprived McLogie of the ability to secure a variance by estoppel: *the Board's determination that McLogie unjustifiably relied on Williams' approval of the revised plans and failed to seek or gain a new zoning permit from Norato. See DiSanto*, slip

---

[6] A local governing body abuses its discretion when it makes factual findings that are not supported by substantial evidence. *Miravich v. Twp. of Exeter, Berks Cnty.*, 54 A.3d 106, 110 n.4 (Pa. Cmwlth. 2012). "Substantial evidence" constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

[7] Unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Internal Operating Procedures of the Commonwealth Court Section 414(a), 210 Pa. Code § 69.414(a).

op. at 7, 2017 WL 2376522, at *3 ("This Court has repeatedly held that equitable estoppel will not lie where the party asserting estoppel knew or should have known that the alleged promisor was without authority to effectuate the alleged promise.").[8] Given that the Board appropriately exercised its discretion as factfinder, we are bound by its credibility determinations[9] and cannot disturb its conclusion that McLogie did not rely in good faith upon Williams' approval of the revised plans.

In sum, I would affirm the Court of Common Pleas of Carbon County's (Common Pleas) September 16, 2021 order, through which Common Pleas affirmed the Board's denial of McLogie's request for relief, and respectfully dissent from the majority opinion on that basis.

_____
ELLEN CEISLER, Judge

---

[8] "It is well settled that this Court may affirm on other grounds where the grounds for affirmance exist." *Thorpe v. Com.*, 214 A.3d 335, 339 n.8 (Pa. Cmwlth. 2019) (citing *Karl Smith Dev. Co. v. Borough of Aspinwall*, 558 A.2d 181, 185 n.6 (Pa. Cmwlth.1989)).

[9] It is well settled that we must avoid the inclination to measure and assess the multitude of factors and considerations that support a zoning ruling, and "must exercise self-restraint as to substituting our opinions far removed from the particular zoning hearing for the well-considered decision of [the Board]." *Cohen v. Zoning Bd. of Adjustment of City of Phila.*, 276 A.2d 352, 355 (Pa. Cmwlth. 1971). "It is, after all, the sole function of the Board, in the performance of its role as fact finder, to evaluate witness credibility and assign evidentiary weight." *Lower Allen Citizens Action Grp., Inc. v. Lower Allen Twp. Zoning Hearing Bd.*, 500 A.2d 1253, 1258 (Pa. Cmwlth. 1985) (punctuation omitted). Indeed, the "Board as fact finder is the ultimate judge of credibility and resolves all conflicts in the evidence," *Eichlin v. Zoning Hearing Board of New Hope Borough*, 671 A.2d 1173, 1175 (Pa. Cmwlth. 1996), and has "the power to reject even un-contradicted testimony if it finds it lacking in credibility." *Lower Allen*, 500 A.2d at 1258.